# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MORGAN C. HUNTLEY, DAI NGUYEN, TINA NGUYEN, ANDREW KIM, ALAN NGUYEN, MICHELLE NGUYEN, MARY DO, NIGEL RICHARDS, PETE O'HEERON, CHESTER J. KASON, LARA ERTWINE, DINA RIENG, JERRY CHAU, BRANDON CLARK, ALBAN HAXHIU, MARIO DIEZ, FRANCES MITRA, CHRISTOPHER SIMON, VINCE MORELLI, ANDREW COLLIER, COREY J. PEIFER, ANDREW GREEN, JAMIE COYLE, NICOLE CASHMAN, ROSE MCMANUS, SYLVIA DEANGELO CASHMAN, JANE RICHARDS, DRILON RADA, MICHELLE CONRON, LIAM LARKIN, BENJAMIN SCHNEIBLE, TIMOTHY EDSON, SPIRO THEOFILATOS, BOHDAN LANCINGER, JOSH WINKELMAN, and DAWN DELGADO,<br><br>Plaintiffs,<br><br>v.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, VBIT DC CORP., ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, SEAN TU, LILLIAN ZHOU, JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>Defendants. | C.A. No. 1-22-cv-01164-CFC-SRF<br><br>**CIVIL ACTION**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiffs Morgan C. Huntley, Dai Nguyen, Tina Nguyen, Andrew Kim, Alan Nguyen,

Michelle Nguyen, Mary Do, Nigel Richards, Pete O'Heeron, Chester J. Kason, Lara Ertwine, Dina

1

Rieng, Jerry Chau, Brandon Clark, Alban Haxhiu, Mario Diez, Frances Mitra, Christopher Simon, Vince Morelli, Andrew Collier, Corey J. Peifer, Andrew Green, Jamie Coyle, Nicole Cashman, Rose McManus, Sylvia DeAngelo Cashman, Jane Richards, Drilon Rada, Michelle Conron, Liam Larkin, Benjamin Schneible, Timothy Edson, Spiro Theofilatos, Bohdan Lancinger, Josh Winkelman, and Dawn Delgado (hereinafter referred to collectively as the "Plaintiffs," and individually as a "Plaintiff"), through their undersigned attorneys, file this Amended Complaint against defendants VBIT Technologies Corp. ("VBIT Tech"), VBIT Mining LLC ("VBIT Mining"), VBIT DC Corp. ("VBIT DC"), Advanced Mining Group ("Advanced Mining" and, together with VBIT Tech, VBIT Mining, and VBIT DC, the "Corporate Defendants"), Danh Vo a/k/a Don Cong Vo ("Mr. Vo"), Lillian Zhou ("Ms. Zhou"), and Sean Tu ("Mr. Tu" and, together with the foregoing defendants, the "Defendants"), for violations of federal securities laws, Delaware consumer protection laws, and common law.  In support of their Amended Complaint, Plaintiffs allege the following:

## NATURE OF THE ACTION

1.      In a "rug-pull" scheme that unfortunately has become common in the cryptocurrency industry, Defendants used the lure of profits from mining Bitcoin to defraud hundreds of investors across the Globe out of millions of dollars, including Plaintiffs.

2.      Though shrouded in technological savvy and industry jargon, Defendants' scheme was simple:  they engaged in a massive Ponzi scheme by aggressively marketing and selling unregistered securities in the form of written contracts purporting to confer certain legal rights in Bitcoin mining equipment and related "hosting services" that did not exist in the form they said it did, and when their scheme inevitably unraveled, they left Plaintiffs high and dry.

3.       As a result of Defendants' fraudulent scheme, each of the Plaintiffs have been damaged in the principal amounts set forth below, plus interest, lost profits, and attorneys' fees and costs, among other damages.

4.       Specifically, Plaintiffs entered into separate "Payment and Hosting Agreement Contract[s]" (collectively, the "Agreements" or individually, an "Agreement") with one or more of the Corporate Defendants whereby the Corporate Defendants would purportedly host physical Bitcoin mining equipment in their data center facilities, which would allow Plaintiffs to mine and procure fractional units or subunits of the popular virtual currency known as Bitcoin.  In exchange, each of the Plaintiffs paid the Corporate Defendants thousands in U.S.-denominated dollars and Bitcoin for purported hardware charges and hosting fees.

5.       Each of the Defendants aggressively marketed their services to the Plaintiffs, representing that their business model would allow investors such as Plaintiffs to utilize computing power to "mine" for Bitcoin.[1]  Simultaneously, Defendants deployed a multi-level marketing scheme—sometimes referred to as a "Pyramid Scheme"— to recruit customers' friends and family to purchase mining packages and fuel their fraudulent scheme.

6.       By mining for Bitcoin using the Corporate Defendants' equipment, Plaintiffs were told, Plaintiffs would be rewarded with new Bitcoin, a unit of which is worth tens of thousands of U.S. dollars but varies depending on market conditions.

7.       Each named Plaintiff invested in Defendants' scheme.  In total, Plaintiffs' aggregate principal investments with the Corporate Defendants were in excess of $3.5 million in U.S. and Bitcoin currency.

---

[1] "Mining" for virtual or cryptocurrency entails applying great amounts of computer power to solve complex algorithms or equations that verify "blocks" of transactions in the particular cryptocurrency — here, Bitcoin.

8. Defendants' Ponzi scheme unraveled when the price for Bitcoin decreased dramatically between late 2021 and mid-2022. In November of 2021, the price of Bitcoin reached a high of about $69,000; by January of 2022, it nearly halved to $35,000; and by mid-June of 2022, it reached a low of under $19,000. Thus, whereas previously Defendants were able to sustain their Ponzi scheme, *i.e.*, accommodate customers' Bitcoin withdrawals, by relying on increases in the market price for Bitcoin, their house of cards fell when the bottom fell out of the market.

9. In or about June of 2022, Plaintiffs discovered that they were unable to make withdrawals from their "virtual wallets," located in online dashboards hosted by the Corporate Defendants.

10. When pressed for answers, Defendants chalked it up to technical glitches described as "batching issues." It soon became clear, however, that something was seriously wrong: Plaintiffs' purported virtual wallets were completely frozen, preventing them from accessing and withdrawing their valuable Bitcoin that were supposed to be held by the Corporate Defendants.

11. In reality, Plaintiffs' virtual wallets were nothing but a smokescreen — they were mere numbers contained in a virtual database and not individualized fractional units or subunits of Bitcoin associated with specific customers.

12. Defendants were not offering and maintaining individualized, hardware-hosted mining services to Plaintiffs and other investors, as they represented. Rather, Defendants were engaged in "cloud mining" or a similar arrangement whereby customers' computing power— dubbed a "hash rate"—is pooled together and wholly unrelated to the physical products and service they are purportedly being sold.

13. Whereas Plaintiffs were promised individualized, specialized, cutting edge computer technology and hardware touted by Defendants as capable of producing hefty returns,

4

Plaintiffs in fact never received the individualized mining equipment and services that they paid for. Rather, Plaintiffs' investments were pooled with investments from other customers, and the Bitcoins appearing in Plaintiffs' "virtual wallet" were mere investment returns arbitrarily determined by Defendants.

14. In addition, the Bitcoin that Plaintiffs purportedly earned were not maintained in Plaintiffs' virtual wallets. Instead, Defendants removed these funds from Plaintiffs' virtual wallets and used them to make high-risk, reckless investments that ultimately failed.

15. To conceal their fraud, Defendants concocted a series of press releases and other statements falsely representing that VBIT had been acquired by Advanced Mining, which was touted as an "Asian-based company" with "global" cryptocurrency operations. However, there is no evidence or record that Advanced Mining existed prior to the "sale" — nor is there any evidence that Advanced Mining's purported CEO, Defendant Ms. Zhou, actually exists.

16. The Advanced Mining "sale" was merely a lulling device for Defendants to avoid responsibility for their fraud, and to permit them to continue victimizing new and existing customers before their inevitable collapse.

17. Defendants' activities have all the markings of a Ponzi scheme cloaked in technological sophistication. Defendants sold far more computing power than they knew they pulled, owned, or leased from third parties, and impermissibly used Bitcoin that was supposed to be held solely for Plaintiffs' benefit. Defendants were able to sustain the Ponzi scheme amid Bitcoin's meteoric rise, and by using a pyramid scheme which transformed their customers into recruiters for their families, friends, and colleagues to become unwitting victims of the scheme.

18.    As discussed more fully below, Defendants have engaged in securities fraud, common law fraud, violated consumer protection laws, and committed various torts and breaches of contract that have caused grave financial and emotional harm to Plaintiffs.

19.    In Addition, Mr. Vo, Ms. Zhou, and Mr. Tu (collectively, the "Individual Defendants") are all culpable participants in the fraudulent scheme, either in their capacities as controlling persons under the United States securities laws or by committing acts of misfeasance such that they should be held personally liable for acts taken for their and the Corporate Defendants' benefit.

## JURISDICTION AND VENUE

20.    Plaintiffs file this Amended Complaint, in part, to recover damages and obtain other relief that Plaintiffs sustained due, among other reasons, to Defendants' unregistered and unqualified offers and sales of securities in violation of §§5, 12(a)(1), and 15 of the Securities Act, 15 U.S.C. §§77e, 771, and 77o.  The claims asserted herein also arise under §§ 10(b) and 20(a)  of the Exchange Act, 15 U.S.C. §78j(b).

21.    Accordingly, this Court has jurisdiction over the subject matter of this action under the Securities Act, 15 U.S.C.A § 78aa, §77o, and 28 U.S.C.A. § 1331.

22.    This Court has supplemental jurisdiction, under 28 U.S.C. §1367, over all remaining state law claims.

23.    The Agreements referenced herein and the products and services sold thereunder, i.e., Defendants' "hosting services" and "mining equipment," constitute investment contracts and securities, respectfully, under Section 3(a)(10) of the Securities Act, 15 U.S.C.A. § 78c, because they are investments in common ventures premised on a reasonable expectation of profits to be derived primarily from the entrepreneurial or managerial efforts of others.

6

24. Venue is proper in this District under 28 U.S.C.A. § 1391 because the underlying investment contracts entered into by the parties requires that venue shall be located in this District.

25. Defendants utilized interstate commerce to advance their fraudulent scheme.

**THE PARTIES**

26. Plaintiff Morgan C. Huntley ("Mr. Huntley") is a competent adult individual with an address located at 1 Washington Street, Newport, Rhode Island 02840.

27. Plaintiff Dai Nguyen ("Dai Nguyen") is a competent adult individual with an address located at 8701 Wyndham Village Drive, Jersey Village, Texas 77040.

28. Plaintiff Tina Nguyen ("Tina Nguyen") is a competent adult individual with an address located at 8701 Wyndham Village Drive, Jersey Village, Texas 77040.

29. Plaintiff Andrew Kim ("Mr. Kim") is a competent adult individual with an address located at 2923 Riata Lane, Houston, Texas 77043.

30. Plaintiff Alan Nguyen ("Alan Nguyen") is a competent adult individual with an address located at 280 NW 67th Street, Spt. 108, Boca Raton, Florida 33487.

31. Plaintiff Michelle Nguyen ("Michelle Nguyen") is a competent adult individual with an address located at 280 NW 67th Street, Spt. 108, Boca Raton, Florida 33487.

32. Plaintiff Mary Do ("Ms. Do") is a competent adult individual with an address located at 6417 Bingham Street, Philadelphia, Pennsylvania 19111.

33. Plaintiff Nigel Richards ("Mr. Richards") is a competent adult individual with an address located at 540 E. Gravers Lane, Wyndmoor, Pennsylvania 19038.

34. Plaintiff Pete O'Heeron ("Mr. O'Heeron") is a competent adult individual with an address located at 17006 Evergreen Elm Way, Houston, Texas 77059.

35. Plaintiff Chester J. Kason ("Mr. Kason") is a competent adult individual with an address located at P.O. Box 1190, Newport, Rhode Island 02840.

36. Plaintiff Lara Ertwine ("Ms. Ertwine") is a competent adult individual with an address located at 2332 Coral Street, Philadelphia, Pennsylvania 19125.

37. Plaintiff Dina Rieng ("Ms. Rieng") is a competent adult individual with an address located at 2 Hyde Park Court, Mount Laurel, New Jersey 08054.

38. Plaintiff Jerry Chau ("Mr. Chau") is a competent adult individual with an address located at 2 Hyde Park Court, Mount Laurel, New Jersey 08054.

39. Plaintiff Brandon Clark ("Mr. Clark") is a competent adult individual with an address located at 460 Greenhedge Drive, Lancaster, Pennsylvania 17603.

40. Plaintiff Alban Haxhiu ("Mr. Haxhiu") is a competent adult individual with an address located at 8 Plymouth Lane, Yardley, Pennsylvania 19067.

41. Plaintiff Mario Diez ("Mr. Diez") is a competent adult individual with an address located at 137 Hewett Road, Wyncote, Pennsylvania 19005.

42. Plaintiff Frances Mitra ("Ms. Mitra") is a competent adult individual with an address located at 104 Halloway Circle, Lansdale, Pennsylvania 19446.

43. Plaintiff Christopher Simon ("Mr. Simon") is a competent adult individual with an address located at 104 Halloway Circle, Lansdale, Pennsylvania 19446.

44. Plaintiff Vince Morelli ("Mr. Morelli") is a competent adult individual with an address located at 40 Chelsea Court, Atlantic City, New Jersey 08401.

45. Plaintiff Andrew Collier ("Mr. Collier") is a competent adult individual with an address located at 432 Greenhedge Drive, Lancaster, Pennsylvania 17603.

46.     Plaintiff Corey J. Peifer ("Mr. Peifer") is a competent adult individual with an address located at 300 Newport Road, Duncannon, Pennsylvania 17020.

47.     Plaintiff Andrew Green ("Mr. Green") is a competent adult individual with an address located at 28 Champlin Street, Newport, Rhode Island 02840.

48.     Plaintiff Jamie Coyle ("Ms. Coyle") is a competent adult individual with an address located at 824 S. 12th Street, Unit 1, Philadelphia, Pennsylvania 19147.

49.     Plaintiff Nicole Cashman ("Nicole Cashman") is a competent adult individual with an address located at 540 East Gravers Lane, Wyndmoor, Pennsylvania 19038.

50.     Plaintiff Rose McManus ("Ms. McManus") is a competent adult individual with an address located at 713 Avondale Lane, Swarthmore, Pennsylvania 19081.

51.     Plaintiff Sylvia DeAngelo Cashman ("Sylvia Cashman") is a competent adult individual with an address located at  2402 Pennsylvania Avenue, Unit 18B22, Philadelphia, Pennsylvania 19130.

52.     Plaintiff Jane Richards ("Ms. Richards") is a competent adult individual with an address located at 215 Plymouth Road, Unit 1117, Plymouth Meeting, Pennsylvania 19462.

53.     Plaintiff Drilon Rada ("Mr. Rada") is a competent adult individual with an address located at 3738 Levy Lane, Huntingdon Valley, Pennsylvania 19006.

54.     Plaintiff Michelle Conron ("Ms. Conron") is a competent adult individual with an address located at 1244 Country Club Drive, Springfield, Pennsylvania 19064.

55.     Plaintiff Liam Larkin ("Mr. Larkin") is a competent adult individual with an address located at 800 N. 2nd Street, #183, Philadelphia, Pennsylvania 19123.

56.     Plaintiff Benjamin Schneible ("Mr. Schneible") is a competent adult individual with an address located at 983 N. 6th Street, Philadelphia, Pennsylvania 19123.

57.    Plaintiff Timothy Edson ("Mr. Edson") is a competent adult individual with an address located at 411 Male Road, Wind Gap, Pennsylvania 18091.

58.    Plaintiff Spiro Theofilatos ("Mr. Theofilatos") is a competent adult individual with an address located at 13-3170 Kaio Lele Rd., Pahoa, Hawaii 96778.

59.    Plaintiff Bohdan Lancinger ("Mr. Lancinger") is a competent adult individual with an address located at 3 Prospect Place, Cambridge, Ontario N1R2M9 Canada.

60.    Plaintiff Josh Winkelman ("Mr. Winkelman") is a competent adult individual with an address located at 957 N. American Street, Philadelphia, Pennsylvania 19123.

61.    Plaintiff Dawn Delgado ("Ms. Delgado") is a competent adult individual with an address located at 1014 Broadway, #403, Santa Monica, California 90401.

62.    Defendant VBIT Tech is a Delaware corporation with a principal place of business located at 1625 Washington Avenue, Philadelphia, Pennsylvania 19146.

63.    Defendant VBIT Mining is a Delaware limited liability company with a principal place of business located at 1625 Washington Avenue, Philadelphia, Pennsylvania 19146. According to VBIT, VBIT Mining is a direct subsidiary of VBIT Tech.

64.    Defendant VBIT DC (together with VBIT Tech and VBIT Mining, the "Corporate Defendants") is a Delaware corporation with a principal place of business located at 1625 Washington Avenue, Philadelphia, Pennsylvania 19146.  VBIT DC is the record owner of the property located at 530 Berne Road, Columbia Falls, Montana 59912, which, upon information and belief, serves as a Bitcoin mining "data center" and houses Equipment owned by Plaintiffs.

65.     Upon information and belief, VBIT DC owns additional Bitcoin mining facilities, including in Colorado and Calgary, Canada.[2]

66.     According to Defendants, Defendant Advanced Mining is an "Asian-based," foreign entity whose activities either are located at 1625 Washington Avenue, Philadelphia, Pennsylvania 19146, and/or who operates as the alter ego or instrumentality of VBIT, and/or the Individual Defendants.

67.     Defendant Mr. Vo is a competent adult individual who, upon information and belief, resides at 1823 S. Dover Street, Philadelphia, Pennsylvania 19145.  Mr. Vo was the Chief Executive Officer of VBIT until in or about January 2022.  Mr. Vo exercised control over VBIT and directed and/or authorized, directly or indirectly, the sale and solicitation of investment securities to the public.

68.     Defendant Mr. Tu is a competent adult individual who, upon information and belief, resides at 1390 Braun Court, Eagan, Minnesota 55123.  Mr. Tu is the former Chief Technology Officer of VBIT, and the present Chief Operating Officer of Advanced Mining.  Mr. Tu exercised and continues to exercise control over the Corporate Defendants and directed and/or authorized, directly or indirectly, the sale and solicitation of investment securities to the public.

69.     Defendant Ms. Zhou is purported to be a competent adult individual, the current Chief Executive Officer of Advanced Mining and, upon information and belief, resides in Philadelphia, Pennsylvania.  Ms. Zhou exercised control and continues to exercise control over the Advanced Mining and directed and/or authorized, directly or indirectly, the sale and solicitation of investment securities to the public.

---

[2] Plaintiffs reserve the right, and intends to file separate actions, including for Replevin, in jurisdictions where Plaintiffs' Equipment are located.

**FACTUAL ALLEGATIONS**

**A.    Cryptocurrencies, Bitcoin, and Mining**

70.    Created in 2009, Bitcoin is the World's first and most popular cryptocurrency.  A cryptocurrency is a decentralized digital medium of exchange and store of value.

71.    Bitcoin relies on technology called the "blockchain," which is a decentralized public ledger of all transactions in a particular cryptocurrency.  By utilizing the blockchain, Bitcoin is able to avoid centralized private and government control.

72.    Tracking and validating the blockchain, *i.e.*, Bitcoin transactions, requires powerful computers that solve complex algorithms and equations.  Units of Bitcoin are generated and rewarded to miners when their computers solve the algorithms that validate Bitcoin transactions.

73.    Bitcoin was designed so that miners are rewarded with new Bitcoin for their work in maintaining the blockchain, *i.e.*, using computers to validate the blockchain.

74.    As Bitcoin's popularity grew, competition among miners increased and more computer processing power was required in order for a miner to solve a block and be rewarded with new Bitcoin.

75.    Today, the computing hardware necessary to mine Bitcoin can cost tens of thousands of dollars, and the electricity needed to power the computers has increased dramatically.

76.    Given these costs, Bitcoin miners began to work collectively in mining enterprises, which offer customers the ability to participate in Bitcoin mining.

77.    These enterprises offer customers simple, efficient, and hands-free access to computing power.

**B.    VBIT, Advanced Mining, and their Known Principals**

78.    Mr. Vo (and others) started VBIT in 2018 to allegedly allow individuals to mine Bitcoin like large institutional miners.

79.    In short, Mr. Vo touted VBIT as a Bitcoin mining company for the average person.

80.    VBIT's pitch was simple:  they would offer two primary products and services to customers:   (a) computer hardware, or "hashboards" specialized for Bitcoin mining (the "Equipment"), and (b) so-called "hosting" services (the "Hosting Services"), which would enable customers to mine Bitcoin with no effort or technical expertise.

81.    VBIT advertised on its website, "[y]ou don't need to do anything regarding the setup or maintenance of your hardware.  We take care of logistics, installing and updating software, providing affordable electricity, and keeping your equipment cool and in working order."

82.    VBIT falsely represented to customers, including Plaintiffs, that it "operate[s] some of the largest and most efficient mining facilities in the world, with unprecedented access to clean, cheap power and expert staff."

83.    Through its aggressive marketing efforts, VBIT falsely represented to the public—Plaintiffs included—that it would host individualized Equipment in its world-class datacenters in exchange for "hosting" fees.

84.    Though VBIT's ownership and operational structure is murky, Mr. Vo founded VBIT and serves as its Chief Executive Officer from its founding in 2018 through January 2022 at the earliest — but possibly later.

85.    Mr. Tu was VBIT's Chief Technology Officer until January 2022, and presently serves as Advanced Mining's Chief Operating Officer.  According to his LinkedIn profile, Mr. Tu

sought to provide VBIT customers with "the technology, infrastructure, services and support that enables them to be successful miners and achieve their financial goals."

86.    At all relevant times, Mr. Tu has had control over VBIT's and Advanced Mining's proprietary and other technology, including but not limited to, the virtual wallet, online dashboard, and Equipment.

87.    Ms. Zhou is advertised as the current Chief Executive Officer of Advanced Mining. Though Ms. Zhou periodically communicates with customers through email correspondence and press releases,  it presently is unknown whether Ms. Zhou exists, or whether Ms. Zhou is a fictitious individual created by Defendants to perpetuate their scheme.

88.    Advanced Mining, which now purportedly owns VBIT, similarly represents on its website that it can provide customers the opportunity to purchase their personal Bitcoin mining equipment with "custom designed data centers," the "cheapest electricity rates," and "efficient mining systems."

89.    Advanced Mining's website further advertises that Bitcoin mining previously required "a huge amount of know-how, but now anyone can leverage [Advanced Mining's] experts' skills relieving you of setup and maintenance, so you can focus on the more important things to ensure a profitable operation.  Advanced Mining advertises that it is "Highly Proven & Trusted.  Built by technology and financial experts, our US-based operations are designed for clients who seek a reliable partner.  Our customer support is staffed by proven mining specialists. Any questions or concerns?  Just call or write!"

## C.    Plaintiffs Enter Into Numerous Agreements with VBIT and Advanced Mining

90.     Relying on Defendants' false advertising and marketing pitches, Plaintiffs entered into numerous Agreements with the Corporate Defendants.

91.    Though Plaintiffs entered into separate and distinct Agreements with the Corporate Defendants, their terms and conditions were materially the same.   A true and correct copy of one such Agreement between Plaintiff Mr. Huntley and VBIT (the "Huntley Agreement") is attached hereto as **Exhibit "A"** and incorporated herein.

92.    Defendants offered and continue to advertise tiered mining packages, ranging from "Silver" on the low end (purportedly 33,333 in giga hash power per second ("GH/s"), to "Black Diamond" on the high end (purportedly 800,000  GH/s).  The prices for Defendants' mining packages have fluctuated with the market price for Bitcoin.

93.    In the Agreements, the Corporate Defendants represented that they would be utilizing individualized Equipment and Hosting Services for Plaintiffs' benefit:

> The first payment will be due 30 days after the first day **your equipment is installed and actively running** . . . .
>
> ***
>
> **1.  Service.**
> 1.1    Facility. Service Provider will provide server hosting facility, electrical power, and Internet access to Customer at Service Provider's and partner facilities (the "Facility") for the purpose of **installing, maintaining, and operating Customer's leased or owned servers** and ASIC chips (the "Equipment"), which may be updated from time to time to add or delete Equipment with written notification to the Customer.

**Exhibit "A"** at pp. 1,3 (emphasis added).

94.     Defendants made similar representations about the nature of their Equipment and Hosting Services on their website's FAQ section:

> **Is Advanced Mining a cloud mining company?**
>
> No, Advanced Mining is a hardware reseller offering hosting services. The consumer purchases actual ASIC hardware and NOT a cloud mining contract. Customers can choose to utilize our superior hosting services or have their hardware shipped to them,

15

> subject to shipping and handling charges.  Please refer to our Terms and Conditions for details.

***

> **Why should I host my miners with AM instead of my own facility?**
>
> Bitcoin mining computer hardware requires technical knowledge to setup, a well ventilated space and huge amounts of ongoing electricity at a high voltage to operate. You will incur very high fees to set-up the space and high ongoing electricity bills to operate, not to mention the loud noise these computers generate. So just let us worry about setting it up and maintaining it for you while you decide on where to distribute your hashpower and collect your rewards!

95.    The Agreements are not "true leases"; rather, they are, by operation of law, equipment purchase and service agreements.

96.    For example, the Agreements provide that Plaintiffs had the option to "purchase" their Equipment for $1, plus shipping and handling fees:

> **Use and leasing rights with a buyout option to:**

***

> . . . Customer can execute buyout option on Equipment referenced above at any time by submitting a written request of buyout execution and shipment of said equipment.  Upon such request, Customer shall pay the shipping and handling fee described in section 2.1 of this agreement in additional to a $1.00 USD buyout and the balance of all payments described above.

*See, e.g.*, **Ex. "A"** at pp.1,2.

97.    The purported "purchase" price of $1 plus shipping and handling fees is far below fair market value for the Equipment.

98.    Further, the Agreements provide that the Corporate Defendants may file UCC-1 financing statements to obtain security interests and liens in the Equipment — which is a hallmark of personal property ownership.  *See, e.g.*, **Ex. "A"** at ¶ 4.

16

99.     In the Agreements, the Corporate Defendants guaranteed that Plaintiffs' Equipment would be operational for at least 95% of the time in a given year, and that the Corporate Defendants would provide a credit to Plaintiffs to the extent "annual uptime" falls below 95%.  *See, e.g.,* **Ex. "A" ¶** 1.2.

100.     The Agreements provide for an indefinite term, which only may be terminated by the Corporate Defendants for cause.  *See, e.g.*, **Ex. "A" ¶** 2.2.

101.     Despite the foregoing provisions, Defendants sought to limit Plaintiffs' access to their Equipment and the facilities in which they are supposedly located.  *See, e.g.*, **Ex. "A" ¶** 5.2 ("Only those persons specifically authorized by Service Provider may access the Facility").

102.     Set forth below are details concerning each of the Agreements that the Corporate Defendants entered into with Plaintiffs, which contain substantially the same or similar terms and conditions as set forth above:

   a.  Mr. Huntley entered into four Agreements with the Corporate Defendants:  (1) a March 19, 2021 Agreement with VBIT Tech and VBIT Mining; (2) an August 23, 2021 Agreement with VBIT Mining; (3) an October 27, 2021 Agreement with VBIT Mining, and (4) a February 25, 2022 Agreement with Advanced Mining.  Mr. Huntley has been damaged in the principal amount of no less than $189,790.83, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

   b.  Dai Nguyen entered into an August 27, 2021 Agreement with VBIT Mining.  Dai Nguyen has been damaged in the principal amount of no less than $72,320, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

17

c.  Tina Nguyen entered into two Agreements with the Corporate Defendants: (1) a July 12, 2021 Agreement with VBIT Mining; and (2) an August 24, 2021 Agreement with VBIT Mining. Tina Nguyen has been damaged in the principal amount of no less than $88,610, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

d.  Mr. Kim entered into a November 17, 2021 Agreement with VBIT Mining. Mr. Kim has been damaged in the principal amount of no less than $139,699, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

e.  Alan Nguyen entered into two Agreements with the Corporate Defendants: (1) a March 11, 2021 Agreement with VBIT Mining and VBTI Tech; and (2) a September 2, 2021 Agreement with VBIT Mining. Alan Nguyen has been damaged in the principal amount of no less than $86,576, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

f.  Michelle Nguyen entered into a September 2, 2021 Agreement with VBIT Mining. Michelle Nguyen has been damaged in the principal amount of no less than $72,320, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

g.  Ms. Do entered into a March 20, 2021 Agreement with VBIT Mining. Ms. Do has been damaged in the principal amount of no less than $7,128, plus interest,

attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

h.  Mr. Richards entered into eight Agreements with the Corporate Defendants:  (1) a February 24, 2021 Agreement with VBIT Tech and VBIT Mining; (2) a March 9, 2021 with VBIT Tech and VBIT Mining;  (3) a July 7, 2021 Agreement with VBIT Mining; (4) an August 4, 2021 Agreement with VBIT Mining; (5) an August 12, 2021 Agreement with VBIT Mining; (6) an August 25, 2021 Agreement with VBIT Mining; (7) an October 26, 2021 Agreement with VBIT Mining; (8) a November 24, 2021 Agreement with VBIT Mining.  Mr. Richards has been damaged in the principal amount of no less than $419,340, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

i.  Mr. O'Heeron entered into a November 16, 2021 Agreement with VBIT Mining. Mr. O'Heeron has been damaged in the principal amount of no less than $50,000, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

j.  Mr. Kason entered into a January 11, 2022 Agreement with VBIT Mining.  Mr. Kason has been damaged in the principal amount of no less than $15,000, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

k.  Ms. Ertwine entered into five Agreements with the Corporate Defendants:  (1) a February 8, 2021 Agreement with VBIT Mining;  (2) an August 19, 2021 Agreement with VBIT Mining; (3) an August 24, 2021 Agreement with VBIT

19

Mining; and (4) an October 18, 2021 Agreement with VBIT Mining; and (5) a March 3, 2022 Agreement with Advanced Mining. Ms. Ertwine has been damaged in the principal amount of no less than $374,106.62, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

l.  Ms. Rieng entered into a November 4, 2021 Agreement with VBIT Mining. Ms. Rieng has been damaged in the principal amount of no less than $71,208.89, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

m. Mr. Chau entered into a March 21, 2021 Agreement with VBIT Tech and VBIT Mining. Mr. Chau has been damaged in the principal amount of no less than $25,485.58, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

n.  Mr. Clark entered into an August 27, 2021 Agreement with VBIT Mining. Mr. Clark has been damaged in the principal amount of no less than $12,695, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

o.  Mr. Haxhiu entered into two Agreements with the Corporate Defendants: (1) an August 9, 2021 Agreement with VBIT Mining; and (2) an October 21, 2021 Agreement with VBIT Mining. Mr. Haxhiu has been damaged in the principal amount of no less than $129,761.22, plus interest, attorneys' fees and costs, punitive

20

damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

p. Mr. Diez entered into a November 18, 2021 Agreement with VBIT Mining. Mr. Diez has been damaged in the principal amount of no less than $95,637.84, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

q. Ms. Mitra entered into two Agreements with the Corporate Defendants: (1) a July 2021 Agreement with VBIT Mining; and (2) an October 2021 Agreement with VBIT Mining. Ms. Mitra has been damaged in the principal amount of no less than $32,467.50, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

r. Mr. Simon entered into three Agreements with the Corporate Defendants: (1) a July 2021 Agreement with VBIT Mining; (2) a March 25, 2021 Agreement with VBIT Mining; and (3) a March 28, 2021 Agreement with VBIT Mining. Mr. Simon has been damaged in the principal amount of no less than $31,858.84, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

s. Mr. Morelli entered into an Agreement with VBIT Mining on July 1, 2021. Mr. Morelli has been damaged in the principal amount of no less than $12,614, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

21

t.  Mr. Collier entered into an August 25, 2021 Agreement with VBIT Mining.  Mr. Collier has been damaged in the principal amount of no less than $16,144, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

u.  Mr. Peifer entered into a September 2, 2021 Agreement with VBIT Mining.  Mr. Peifer has been damaged in the principal amount of no less than $72,320, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

v.  Mr. Green entered into a November18, 2021 Agreement with VBIT Mining.  Mr. Green has been damaged in the principal amount of no less than $52,388, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

w.  Ms. Coyle entered into a September 16, 2021 Agreement with VBIT Mining.  Ms. Coyle has been damaged in the principal amount of no less than $4,938, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

x.  Nicole Cashman entered into a March 16, 2021 Agreement with VBIT Tech and VBIT Mining.  Ms. Cashman has been damaged in the principal amount of no less than $12,800.08, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

y.  Ms. McManus entered into a March 30, 2022 Agreement with Advanced Mining.  Ms. McManus has been damaged in the principal amount of no less than $3,750,

22

plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

z. Sylvia Cashman entered into a September 16, 2021 Agreement with VBIT Mining. Sylvia Cashman has been damaged in the principal amount of no less than $4,799, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

aa. Jane Richards entered into an April 12, 2022 Agreement with Advanced Mining. Jane Richards has been damaged in the principal amount of no less than $3,750, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

bb. Mr. Rada entered into four Agreements with the Corporate Defendants: (1) a March 12, 2021 Agreement with VBIT Tech and VBIT Mining; (2) an August 12, 2021 Agreement with VBIT Mining; (3) an August 27, 2021 Agreement with VBIT Mining; and (4) a September 15, 2021 Agreement with VBIT Mining. Mr. Rada has been damaged in the principal amount of no less than $206,013.91, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

cc. Ms. Conron entered into an October 28, 2021 Agreement with VBIT Mining. Ms. Conron has been damaged in the principal amount of no less than $5,201, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

dd. Mr. Larkin entered into twenty-six (26) Agreements with the Corporate Defendants: (1) a September 20, 2021 Agreement with VBIT Mining; (2) an

23

October 12, 2021 Agreement with VBIT Mining; (3) a November 9, 2021 Agreement with VBIT Mining; (4) three November 18, 2021 Agreements with VBIT Mining; (5) three November 24, 2021 Agreements with VBIT Mining; (6) a January 10, 2022 Agreement with Advanced Mining; (7) two February 7, 2022 Agreements with Advanced Mining; (8) two February 9, 2022 Agreements with Advanced Mining; (9) a February 14, 2022 Agreement with Advanced Mining; (10) a February 17, 2022 Agreement with Advanced Mining; (11) a March 2, 2022 Agreement with Advanced Mining; (12) a March 4, 2022 Agreement with Advanced Mining; (13) a March 11, 2022 Agreement with Advanced Mining; (14) a March 30, 2022 Agreement with Advanced Mining; (15) a March 21, 2022 Agreement with Advanced Mining; (16) two April 22, 2022 Agreements with Advanced Mining; (17) an April 25, 2022 Agreement with Advanced Mining; and (18) three May 27, 2022 Agreements with Advanced Mining.  Mr. Larkin has been damaged in the principal amount of no less than $927,807, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

ee. Mr. Schneible entered into a November 17, 2021 Agreement with VBIT Mining. Mr. Schneible has been damaged in the principal amount of no less than $53,413, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper.

ff. Mr. Edson entered into six Agreements with the Corporate Defendants:  (1) an October 28, 2021 Agreement with VBIT Mining; (2) three January 10, 2022 Agreements with VBIT Mining; (3) a March 22, 2022 Agreement with Advanced

24

Mining; and (4) a March 23, 2022 Agreement with Advanced Mining.  Mr. Edson has been damaged in the principal amount of no less than $81,228, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

gg. Mr. Theofilatos entered into an Agreement with VBIT on November 16, 2021.  Mr. Mr. Theofilatos has been damaged in the principal amount of no less than $15,627, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

hh. Mr. Lancinger entered into a November 24, 2021 Agreement with VBIT Mining.  Mr. Lancinger has been damaged in the principal amount of no less than $47,971, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper;

ii. Mr. Winkelman entered into an October 18, 2021 Agreement with VBIT Mining.  Mr. Winkelman has been damaged in the principal amount of no less than $14,776, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper; and

jj. Ms. Delgado entered into a December 26, 2021 Agreement with VBIT Mining.  Ms. Delgado has been damaged in the principal amount of no less than $15,856, plus interest, attorneys' fees and costs, punitive damages, lost investments, opportunity costs, and all other damages that this Court deems just and proper.;

**D.     Defendants Fueled Their Ponzi Scheme Through Multi-Level Marketing**

103.    By the time the Defendants' scheme collapsed in June of 2022, they successfully grew their customer base to about 15,000.

104.    Defendants achieved this rapid growth by using multi-level marketing — turning their unwitting customers into a sales force, armed with falsehoods, and incentivizing them to recruit new customers.

105.    Employees of the Corporate Defendants would often post videos on social media about how to recruit affiliates, which in turn would allow customers to increase their computer power and profits.

106.    When a VBIT or Advanced Mining "affiliate" (*i.e.*, a customer who brings in a new customer) would recruited a new customer, the affiliate would receive a referral commission in cash, gifts, or Bitcoin and, according to Defendants, the affiliate could receive a "boosted hashrate" on their own machines.  The "boosted hashrate" would increase the affiliate's mining power.

107.    By distributing "boosted hashrates" to "affiliates" who brought new customers into the scheme, Defendants were able to sustain their fraud by signing new customers.

108.    In addition, by dolling out "boosted hashrates" as part of their marketing scheme, Defendants sold and distributed far more computer power than they were able to provide to their customers.

**E.    VBIT's Murky Acquisition By "Advanced Mining"**

109.     In late January 2022, VBIT announced that it had been acquired by a company called "Advanced Mining Group" for $105 million.

110.    Around this time, the price of Bitcoin had nearly halved from a high of $69,000 in November 2021 to around $30,000 in January 2022.

111.    In a press release authored by VBIT, Advanced Mining was identified as "an Asian-based company primarily focused on bitcoin mining . . . ."  A true and correct copy of the January 31, 2022 press release is attached hereto as **Exhibit "B"**.

112.    In the press release, VBIT touts Advanced Mining as a company that has been "thriving in the crypto mining sector since 2015 and operating 12 data centers dedicated to bitcoin mining in Europe and Asia." *Id.*

113.    VBIT also stated that it was operating 27,000 Antminer S19 series and S17 series out of five data centers "spreading across the globe in the United States, Canada and Kazakhstan. . . ." *Id.*

114.    Despite the information contained in the press release, Advanced Mining is not— nor has it ever been—registered to do business in any jurisdiction of the United States.

115.    Further, Advanced Mining is a sham — the alter ego and/or instrumentality of VBIT Tech, VBIT Mining, VBIT DC, and the Individual Defendants.

116.    Defendants admitted as much in an October 18, 2022 email from Advanced Mining to its customers, which stated at the bottom of the email that VBIT Tech is merely doing business as Advanced Mining.

117.    Further, on June 18, 2022, the Securities Division for the State of Washington entered into a Consent Order (the "Consent Order") with VBIT whereby VBIT admitted that its Bitcoin mining hardware and service packages were "securities," and accordingly that its business practices violated the securities laws of the State of Washington.  A true and correct copy of the Consent Order is attached hereto as **Exhibit "C"** and incorporated herein by reference.

118.    Notably, the Consent Order is dated almost **six months** after VBIT's purported acquisition by Advanced Mining.  Nevertheless, the "Advanced Mining" moniker appears nowhere in the Consent Order, nor does the Consent Order mention Ms. Zhou.[3]

---

[3] Though the Consent Order relates to conduct occurring in mid-2020, upon information and belief there is no corresponding consent order relating to Advanced Mining.

119.    Even if Advanced Mining *is* a duly authorized legal entity, by operation of law as a result of concepts of successor liability, or *de facto* merger or consolidation, Advanced Mining assumed all the obligations of VBIT.

120.    Advanced Mining conducts the same or substantially the same business that VBIT conducted before VBIT's purported acquisition.

121.    Upon information and belief, VBIT and Advanced Mining have the same or substantially the same ownership.

**F.      The Fraudulent Scheme Unravels**

122.    Beginning in May 2022, Plaintiffs experienced delays in withdrawing Bitcoin from their virtual wallets, which were located in the Corporate Defendants' proprietary "Advanced Mining" dashboards.

123.    By June 2022, Plaintiffs were unable to make any Bitcoin withdrawals whatsoever.

124.    Though Defendants chalked it up to mere technical glitches—described as "batching issues"— Plaintiffs' so-called individualized "virtual wallets" appears to be nothing but a smokescreen — mere numbers contained in a virtual database and not individualized fractional units or subunits of Bitcoin associated with individual customers such as Plaintiffs.

125.    In reality, Defendants were not offering and maintaining individualized, hardware-hosted mining services to Plaintiffs and other investors, as they represented; rather, Defendants either were engaged in "cloud mining," or a similar arrangement whereby customers' computing power—dubbed a "hash rate"—is pooled together and wholly unrelated to the physical products and services purportedly being sold.

126.    Thus, Plaintiffs never received the discrete, individualized Equipment and Hosting Services that they paid for; rather, upon information and belief, Plaintiffs' investments were pooled

with other investments, and the Bitcoins appearing in their "virtual wallets" were mere investment returns arbitrarily determined by Defendants.

127.    Defendants' fraudulent scheme unraveled when the market price of Bitcoin began to tumble in April 2022.  It was only after the price of Bitcoin dropped precipitously did Plaintiffs lose control over their virtual wallets, which prevented and continues to prevent Plaintiffs from making withdrawals.

128.    Defendants' activities have all the markings of a Ponzi scheme cloaked in technological sophistication.  Defendants sold far more computing power than they pooled, owned, or leased from third parties, and they presently owe Plaintiffs and other investors returns far in excess of what they were making on their mining operations, or are able to receive from new customers.

129.    Plaintiffs remain unable to withdraw Bitcoin from their "virtual wallets," despite Defendants' representations that Plaintiffs could withdraw all Bitcoin that they owned at any time.

130.    Defendants also removed content that they posted to social media, including to LinkedIn, Facebook, YouTube, and similar platforms.

131.    On June 27, 2022, Advanced Mining informed its customers, including Plaintiffs, that it "can no longer service the United States market."

132.    As a justification for this decision, Advanced Mining represented that it had entered into a consent order with the United States Securities Exchange Commission (the "SEC"); however, Advanced Mining produced a copy of the Consent Order from the State of Washington — **not** the SEC.  Further, Advanced Mining—which has been held out as a separate and distinct company—is not a counterparty to the Consent Order — VBIT is.

133.    On July 5, 2022, Defendant Mr. Tu emailed customers the following update:

29

- Advanced Mining would no longer be accepting payments;

- "all sales" are "temporarily suspended";

- pending sales would be cancelled or refunded;

- "[n]o new commission and (commission bonuses) will be paid to any returned and cancelled sales;

- "[c]ommission payout will temporarily be suspended until commissions are recalculated based on canceled sales, returns, and refunds;"

- "[a]ffiliate Membership for US residence (and US business entities) will be suspended this week (if not already);

- "We have finalized the WA state list of members; starting today (July 5th), we will begin reaching out to WA members on their options;"

- "We are proactively working on a list of refunds for other states;" and

- "When we are done with WA customers, we will start with other states."

134. Despite Mr. Tu's promises that Plaintiffs would be provided a refund, no such refund has been made to date.

135. All Plaintiffs have demanded the return of their Equipment, the funds that they sent to Defendants, the Bitcoin sitting in their so-called virtual wallets, and the value of the fractional units or subunits of Bitcoin that they would have received had Defendants not engaged in the fraudulent scheme.

136. To date, these demands have not elicited a response.

137. Plaintiffs have fulfilled all conditions precedent to filing this Amended Complaint.

30

## COUNT I
### Unregistered Offer and Sale of Securities in Violation of
### Section 5 and 12(a)(1) of the Securities Act
### (Plaintiffs v. Defendants)

138.  Plaintiffs repeat and incorporates the preceding paragraphs as if fully set forth at length herein.

139.  Section 5(a) of the Securities Act prohibits the direct or indirect use of any means or instruments of transportation or communication in interstate commerce, or of the mails, to sell securities through the use or medium of any prospectuses or otherwise; or to carry or cause to be carried through the mails or in interstate commerce, by any means or instrument of transportation, any security for the purpose of sale or for delivery after sale, unless a registration statement is in effect as to such a security.

140.  Further, Section 5(c) of the Securities Act makes it unlawful for any person to directly or indirectly make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or buy through the use or medium of any prospectus or otherwise any security, unless a registration has been filed as to such security.

141.  Correspondingly, Section 12(a)(1) of the Securities Act grants investors such as Plaintiff a private right of action against any person who offers or sells a security in violation of Section 5, providing:

> Shall be liable … to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a)(2).

31

142.    Each of the Defendants made use of means or instruments of interstate commerce or of the mails to offer to sell and sell securities to Plaintiffs.

143.    The Agreements, including the Equipment and Hosting Services sold pursuant to the Agreements, are securities within the meaning under §2(a)(1) of the Securities Act, 15 U.S.C. §77b(a)(1). Such Equipment and Hosting Services packages exhibit the following particular hallmarks of a security: (a) the investment of Plaintiffs' money was pooled into a common enterprise; (b) the success of the investment opportunities and any potential returns thereon were reliant on the activities of others, including Defendants; and (c) Defendants' Equipment and Hosting Services packages were touted as having the potential for substantial passive returns that would require little to no effort and experience on the part of Plaintiffs.

144.    Defendants are "sellers" and "offerors" within the meaning of the Securities Act because Defendants offered and sold their mining hardware and services packages to Plaintiffs, among others, and further invested Plaintiffs' funds in "pool mining" and other products and services.

145.    No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings and sales alleged herein.

146.    Accordingly, each Defendant has participated in the offer and sale of unregistered securities in violation of §§5(a), 5(c), and 12(a) of the Securities Act, 15 U.S.C. §§77e(a), 772(c), and 771(a).

147.    As a direct and proximate result of Defendants' unregistered offer and sale of securities, Plaintiffs have suffered damages.

**COUNT II**
**Controlling Person Liability**
**Violations of Section 15 of the Securities Act**
**(Plaintiffs v. The Individual Defendants)**

148.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

149.    This Count is asserted against the Individual Defendants under Section 15 of the Securities Act, 15 U.S.C. §77o.

150.    Section 15 of the Securities Act provides for joint and several liability for "controlling persons" who had sufficient power or influence over another person that committed Securities Act violations:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

151.    Defendant Mr. Vo is subject to liability by virtue of his executive position as CEO of VBIT, and the significant influence and supervisory authority over VBIT that he had since in or about 2018.  Mr. Vo co-founded VBIT and was VBIT's Chief Executive Officer until it purportedly was "acquired" by Advanced Mining in January 2022.  According to Mr. Vo's own statements—as reflected in press releases and interviews given to the Philadelphia Weekly newspaper—Mr. VO developed VBIT and its operational and technological strategy.  As a

33

controlling person of VBIT, Mr. Vo knew of and actively participated in the sale of unregistered securities in direct violation of the Securities Act.

152.    Similarly, Mr. Tu is subject to liability by virtue of his top-level executive positions with both VBIT and Advanced Mining, as well as his significant influence and supervisory authority over the Corporate Defendants.  Mr. Tu was the Chief Technology Officer of VBIT and presently serves as Advanced Mining's Chief Operating Officer.  Upon information and belief, Mr. Tu helped develop VBIT technology and was responsible for VBIT's continued technical development.  As a controlling person of VBIT and Advanced Mining, Mr. Tu knew of and actively participated in the sale of unregistered securities in direct violation of the Securities Act.

153.    In addition, Defendant Ms. Zhou—assuming she exists—is subject to liability by virtue of her top-level executive position with Advanced Mining, and her significant influence and supervisory and operational authority over Advanced Mining since it purportedly acquired VBIT in January 2022.  Ms. Zhou purportedly serves as Advanced Mining's Chief Executive Officer and has issued numerous online statements concerning Advanced Mining's operations.  As a controlling person of VBIT, Ms. Zhou knew of and actively participated in the sale of unregistered securities in direct violation of the Securities Act.

154.    The Individual Defendants, separately and together, possess, directly or indirectly, the power to direct or cause the direction of management and policies of the Corporate Defendants.

155.    The Individual Defendants culpably participated in violations of Sections 5, 12(a)(1), and 12(a)(2) of the Securities Act.

156.    Plaintiffs have suffered damages as a result of the Individual Defendants' separate roles as "controlling persons" with respect to VBIT and/or Advanced Mining's violations of the Securities Act.

## COUNT III
### Fraud in the Purchase or Sale of Securities in Violation of
### Section 10(b) of the Securities Act and Rule 10b-5 Issued Thereunder
### (Plaintiffs v. All Defendants)

157.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

158.    The Agreements constitute investment contracts, and therefore "securities" under Section 3(a)(10), 15 U.S.C. §78c(a)(10) of the Securities Act.

159.    Defendants engaged in a fraudulent scheme whereby they misrepresented the nature of their operations and oversold the investment returns from their hosting services and purported mining operations, thereby misrepresenting the nature and profitability of the investments they were selling.

160.    In connection with the sale of securities, Defendants, directly or indirectly, acting intentionally, knowingly, or recklessly, have employed and are employing devices, schemes, or artifices to defraud investors with the use of means or instrumentalities of interstate commerce or of the mails; and have engaged or are engaging in acts, practices, or courses of business which operate as a fraud or deceit upon Plaintiffs.

161.    In connection with the sale of securities, Defendants, directly or indirectly, acting intentionally, knowingly, or recklessly, have made or are making untrue statements of material fact or have omitted statements of material facts through the use of means or instrumentalities of interstate commerce or of the mails.

162.    By engaging in the conduct described herein, Defendants knowingly conspired to bring securities into the marketplace that were not entitled to be marketed and which, absent the fraud, would not have been marketable at the price given.

35

163.    For the foregoing reasons, Defendants have violated Section 10(b) of the Securities Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

**COUNT IV**
**Fraud – Intentional Misrepresentation**
**(Plaintiffs v. Defendants)**

164.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

165.    As set forth more fully herein, Defendants made materially false representations to Plaintiff, including but not limited to the following misrepresentations (collectively, the "Misrepresentations"):  (a) that Defendants would not utilize Bitcoin mined by Plaintiffs for their own use and benefit; (b) that Defendants were duly authorized to offer the Equipment and Hosting Services as specifically detailed in the Agreements; (c) that Defendants were offering and maintaining individualized, hardware-hosted mining services, where in reality Plaintiffs' computing power was pooled together with others and was unrelated to the physical products and services being sold; (d) that Plaintiffs were purchasing Bitcoin-mining hardware that could be removed from Defendants' so-called "data centers" with the payment of $1, plus shipping and handling; (e) that Plaintiffs could remove or "cash out" their mined Bitcoin at any time; (f) that Advanced Mining was a separate and distinct entity from VBIT, (g) that the freezing of Plaintiffs' virtual wallets in June 2022 were the result of technical "batching" issues, as opposed to Defendants' inability to sustain their Ponzi scheme as the price of Bitcoin declined; and (h) all other material misrepresentations set forth in this Amended Complaint.

166.    Defendants knew that the Misrepresentations were materially false when made, and intended that Plaintiffs would rely on them.

36

167. Plaintiffs justifiably and reasonably relied on Defendants' Misrepresentations by entering into the Agreements with VBIT and "Advanced Mining," and as a result remitted in excess of $3.5 million to Defendants.

168. Defendants' conduct was wanton and willful, and committed with actual malice.

169. As a direct and proximate consequence of Defendants' Misrepresentations, Plaintiffs has suffered an actual loss and is further entitled to an award of punitive damages.

**COUNT V**
**Negligent Misrepresentation**
**(Plaintiffs v. Defendants)**

170. Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

171. Defendants had a pecuniary duty to provide accurate representations to Plaintiffs.

172. Defendants supplied the foregoing Misrepresentations to Plaintiffs.

173. Defendants failed to exercise reasonable care in communicating what they would actually be providing to Plaintiffs.

174. As a direct and proximate consequence of Defendants' Misrepresentations, Plaintiffs has suffered an actual loss and is further entitled to an award of punitive damages.

**COUNT VI**
**Civil Conspiracy**
**(Plaintiffs v. Defendants)**

175. Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

176. Defendants Mr. Vo, Mr. Tu, VBIT Mining, VBIT Tech, and VBIT DC conspired with Advanced Mining and Ms. Zhou to defraud Plaintiffs by representing to Plaintiffs and the

public that Advanced Mining had acquired VBIT for $105 million, when in fact the purported acquisition was a sham designed to perpetuate or otherwise cover up Defendants' Ponzi scheme.

177.    Defendants Mr. Vo, Mr. Tu, VBIT Mining, VBIT Tech, and VBIT DC conspired with Advanced Mining and Ms. Zhou to conceal the Ponzi scheme and that Plaintiffs had no funds in their virtual wallets by issuing press releases, emails, and other correspondence describing issues with the virtual wallets as technical "batching issues," where in reality Defendants had taken Plaintiffs' crypto-assets to further their Ponzi scheme.

178.    As a direct and proximate consequence of their conspiracy, Plaintiffs suffered actual damages by (1) entering into additional Agreements with VBIT and/or Advanced Mining after the January 2022 press release, (2) opting not to withdraw their crypto-assets from their virtual wallets after issuing of the January 2022 press release and subsequent marketing material, and (3) lulling Plaintiffs into a false sense of security by referring to the freezing of Plaintiffs' virtual wallets as "batching issues," rather than the consequence of the massive Ponzi scheme that Defendants were perpetuating.

**COUNT VII**
**Breach of Contract**
**(Plaintiffs v. Defendants)**

179.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

180.    The Agreements constitute valid contracts between Plaintiffs, on the one hand, and VBIT and Advanced Mining, on the other hand.

181.    VBIT and Advanced Mining are in default of their obligations to Plaintiffs under the Agreement, specifically that Defendants would fulfill all the covenants, representations, and promises set forth in the Agreement through the end of each Agreement's term, including but not

limited to: (a) the provision of individualized physical mining equipment and hosting services through the end of the terms of the Agreements; (b) that Plaintiffs would have the ability to freely withdraw their Bitcoin from their so-called virtual wallets; (c) that Plaintiffs could obtain Hosting Services from VBIT and Advanced Mining in perpetuity, so long as they pay the required fees; (d) that Plaintiffs could execute a purported "buyout option" for the Equipment by making payment of $1, plus shipping fees; (e) that VBIT and Advanced Mining cannot terminate their obligations under the Agreements without cause; and (f) that VBIT and Advanced Mining would credit Plaintiffs to the extent their Equipment experiences "downtime," *i.e.*, nonfunctionality.

182.   Despite demand, Defendants have failed and refused to satisfy their obligations under the Agreements.

183.   The Individual Defendants named herein are individually liable for the Corporate Defendants' breaches of the Agreement under the direct participation theory and alter ego/instrumentality theories of liability, as discussed more fully below.

184.   As of the date of this Complaint, Defendants, jointly and severally, owe Plaintiff in excess of $3.5 million in the aggregate under the Agreements, plus interest and other damages.

### COUNT VIII
**Unjust Enrichment/Restitution (*In the Alternative)*
(Plaintiffs v. Defendants)**

185.   Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

186.   Plaintiffs paid Defendants in reliance on, among other things, the covenants, promises, and representations that Defendants made in the Agreements and elsewhere, as more fully discussed above.

187.   Plaintiffs reasonably relied on Defendants' promises.

188.    It would be unjust and inequitable if Defendants were allowed to retain Plaintiffs' funds and equipment without Plaintiffs retaining the return consider as envisaged under the Agreement, and as further marketed and advertised to Plaintiffs and others.

189.    By reason of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiffs.

190.    As of the date of this Complaint, Defendants, jointly and severally, have been unjustly enriched in an aggregate amount in excess of $3.5 million, plus lost profits.

**COUNT IX**
**Delaware Uniform Deceptive Trade Practices Act 6 DE Code § 2531,** *et seq.*
**Delaware Consumer Fraud Act – 6 DE Code § 2511,** *et seq.*
**(Plaintiffs v. The Corporate Defendants)**

191.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

192.    The Agreements purport to be governed under Delaware law.

193.    As set forth more fully herein, the Corporate Defendants made materially false Misrepresentations to Plaintiffs.

194.    The Corporate Defendants intended that such misrepresentations were relied on related to the purported lease or sale of Bitcoin mining hardware.

195.    These deceptions, frauds, false promises, Misrepresentations, and/or omissions of material facts are unlawful practices under the Delaware Consumer fraud Act, 6 DE Code § 2513.

196.    These materially false Misrepresentations are also unlawful deceptive trade practices under the Delaware Uniform Deceptive Trade Practices Act, 6 DE Code § 2532.

197.    Plaintiffs have suffered an ascertainable loss as a result of the Corporate Defendants' unlawful practices.

198.    Plaintiffs are entitled to treble damages and attorneys' fees and costs for this violation.

**COUNT X**
**Pennsylvania UTPCPL – 73 P.S. § 201, *et seq.***
**(Plaintiffs v. The Corporate Defendants)**

199.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

200.    The Corporate Defendants' principal place of business is located in Philadelphia, Pennsylvania, and therefore Defendants are subject to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

201.    Plaintiffs purchased goods and/or services for personal purposes from The Corporate Defendants.

202.    Plaintiffs have suffered ascertainable losses of the money they paid to the Corporate Defendants.

203.    The monetary losses suffered by Plaintiffs are directly attributable to methods, acts, or practices declared unlawful by 73 P.S. § 201-3 and § 201-2(4)(i)-(xxi).

204.    Among other violations of the PA UTPCPL, the Corporate Defendants' illegal conduct includes:

    a.   Representing that goods or services have characteristics, benefits, or quantities that they did not have, § 201-2(4)(v);

    b.   Advertising goods or services with intent not to sell them as advertised, § 201-2(4)(ix);

41

c.  Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity, § 201-2(4)(x); and

d.  Promoting or engaging in a Ponzi scheme where a person gives consideration for the opportunity to receive compensation that is derived primarily from the introduction of other persons into the plan or operation, § 201-2(4)(xiii).

e.  Plaintiffs are entitled to treble damages and attorneys' fees and costs for this violation.

## COUNT XI
### Appointment of a Receiver
### (Plaintiffs v. The Corporate Defendants)

205.  Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

206.  Plaintiffs have been irreparably harmed as set forth above, and without judicial intervention and the appointment of a receiver, Plaintiffs will continue to suffer irreparable harm.

207.  A receiver also is necessary to determine if the Corporate Defendants possess assets to pay its creditors and, if not, whether the Corporate Defendants' assets should be liquidated and/or preserved in an orderly manner for the benefit of all Plaintiffs as prospective judgment creditors.

208.  The Corporate Defendants are insolvent or in the zone of insolvency.

209.  Without the appointment of a receiver, Plaintiffs and hundreds of other similarly situated persons are in danger of losing all recourse against the Corporate Defendants, as there is imminent danger of the Corporate Defendants' remaining assets being concealed, transferred, squandered, or otherwise depleted.

210.    As demonstrated above, Plaintiffs have common law and statutory grounds for the appointment of a receiver, and equity demands the appointment of a receiver to take control of the Corporate Defendants' business operations and to determine whether those business operations are viable and, if not, to conduct an orderly and transparent liquidation of assets.

211.    The appointment of a receiver is necessary to prevent further irreparable harm to Plaintiffs.

**COUNT XII**
**Successor Liability/De Factor Merger or Consolidation**
**(Plaintiffs v. The Corporate Defendants)**

212.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

213.    Assuming Advanced Mining is not a sham but a viable entity, Advanced Mining conducts  the same business that VBIT previously conducted before they were purportedly acquired by Advanced Mining.

214.    Upon information and belief, Advanced Mining and VBIT have the same or substantially the same ownership.

215.    VBIT was purportedly acquired by Advanced Mining in or about January 2022 and its assets and operations were subsequently used for the benefit of Advanced Mining.

216.    By operation of law and as a result of concepts of successor liability, or de factor merger or consolidation, Advanced Mining assumed all the obligations of VBIT.

217.    If Advanced Mining actually exists, it presently maintains possession, custody, and/or control of, and/or benefits from, the Equipment and Plaintiffs' funds.

218.    If Advanced Mining actually exists, it assumed ownership of VBIT's business with little more than a technical name change.

219.    Based on the foregoing, there was a de factor merger or consolidation between VBIT and Advanced Mining, as a result of which Advanced Mining is liable for all of VBIT's debts to Plaintiffs.

**REQUEST NO. 1**
**PARTICIPATION THEORY OF LIABILITY**

220.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

221.    With respect to Counts IV (Fraud), V (Negligent Misrepresentation), and VIII (Unjust Enrichment), each of the Individual Defendants actively and directly participated in the conduct giving rise such claims.

222.    The Individual Defendants' Misrepresentations and other conduct set forth above constitute acts of misfeasance, as each of them personally undertook active efforts to misrepresent information that Plaintiffs relied on before entering into the Agreements.

223.    Accordingly, Plaintiffs requests that the Court hold Defendants, Danh Vo a/k/a Don Cong Vo, Lillian Zhou, and Sean Tu individually liable for the misfeasance that they committed against Plaintiffs, which gave rise to Plaintiffs' claims under Counts IV, V, and VIII.

**REQUEST NO. 2**
**REQUEST TO PIERCE THE CORPORATE VEIL**

224.    Plaintiffs repeat and incorporate the preceding paragraphs as if fully set forth at length herein.

225.    With respect to all Counts, Plaintiffs request that the Court pierce the corporate veil and hold VBIT Tech, VBIT Mining, VBIT DC, and Advanced Mining jointly and severally liable for each other's acts and omissions for the following reasons, among others alleged herein:

　　a.    Upon information and belief, "Advanced Mining", VBIT Tech, VBIT Mining, and

44

VBIT DC share or shared a common identity;

b.  The assets of VBIT Tech, VBIT Mining, and/or VBIT DC capitalized Advanced Mining;

c.  VBIT Tech, VBIT Mining, and VBIT DC *de facto* merged or consolidated into Advanced Mining;

d.  There is a commonality of ownership and control between Advanced Mining and the remaining Corporate Defendants; and

e.  Advanced Mining presently is utilizing assets, including personalty and intellectual property, that is or was owned by VBIT Tech, VBIT Mining and/or VBIT DC.

226.  Further, all of the Corporate Defendants operated or operate without due regard for corporate or entity formalities.

227.  All relevant times the Corporate Defendants have commingled their respective funds with each other.

228.  It would be patently unjust to permit any of the Corporate Defendants to avoid the obligations owed to Plaintiffs under the Agreements and applicable law.

229.  Upon information and belief, VBIT and Advanced Mining are insolvent or in the zone of insolvency.

230.  Accordingly, the Court should enter an order piercing the corporate veil, under both an enterprise theory, or alter ego and/or instrumentality theory of liability, as the Entity Defendants have conducted business in such a way, intentionally or negligently and/or without regard to corporate or entity formalities, as to hinder potential creditors like Plaintiffs.

45

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Morgan C. Huntley, Dai Nguyen, Tina Nguyen, Andrew Kim, Alan Nguyen, Michelle Nguyen, Mary Do, Nigel Richards, Pete O'Heeron, Chester J. Kason, Lara Ertwine, Dina Rieng, Jerry Chau, Brandon Clark, Alban Haxhiu, Mario Diez, Frances Mitra, Christopher Simon, Vince Morelli, Andrew Collier, Corey J. Peifer, Andrew Green, Jamie Coyle, Nicole Cashman, Rose McManus, Sylvia DeAngelo Cashman, Jane Richards, Drilon Rada, Michelle Conron, Lee Larkin, Benjamin Schneible, Timothy Edson, Spiro Theofilatos, Bohdan Lancinger, Josh Winkelman, and Dawn Delgado respectfully request judgment in their favor and against Defendants VBIT Technologies Corp., VBIT Mining LLC, VBIT DC Corp., Advanced Mining Group, Danh Vo a/k/a Don Cong Vo, Lillian Zhou, and Sean Tu, jointly and severally, as follows:

A.      Declaring that the Equipment and Hosting Services are securities as defined under the Securities Act;

B.      Declaring that Defendants offered and sold unregistered securities in violation of the Securities Act;

C.      Declaring that all Defendants are liable to Plaintiff under §§ 5, 12(a)(1), and 15 of the Securities Act;

D.      Awarding Plaintiffs compensatory damages in the amounts set forth in Paragraph 93 herein, plus interest;

E.      Awarding Plaintiffs punitive damages;

F.      Awarding Plaintiffs the costs of this action, including reasonable allowance for attorneys' fees and litigation costs;

G.      Piercing the corporate veil of VBIT Tech, VBIT Mining, VBIT DC, and Advanced

Mining, both horizontally to reach the assets of each of the Corporate Defendants, and vertically to reach the assets of their principals;

H.     Determining that the Individual Defendants are jointly and severally liable with the Corporate Defendants for the tortious conduct alleged herein, under the participation theory of liability;

I.     Granting the immediate appointment of a receiver for Defendants' assets and business operations with such powers and duties as this Court shall determine; and

J.     Ordering such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: _____, 2023

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Sally E. Veghte*
Sally E. Veghte (Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone:  (302) 552-5502
Facsimile:  (302) 426-9193
sveghte@klehr.com

-    And    -

D. Joseph Ferris (admitted pro hac vice)
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone:  (215) 569-3022
Facsimile:  (215) 568-6603
jferris@klehr.com

*Attorneys for Plaintiffs*

47