IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MORGAN C. HUNTLEY, DAI NGUYEN, TINA NGUYEN, ANDREW KIM, ALAN NGUYEN, MICHELLE NGUYEN, MARY DO, NIGEL RICHARDS, PETE O'HEERON, CHESTER J. KASON, LARA ERTWINE, DINA RIENG, JERRY CHAU, BRANDON CLARK, ALBAN HAXHIU, MARIO DIEZ, FRANCES MITRA, CHRISTOPHER SIMON, VINCE MORELLI, ANDREW COLLIER, COREY J. PEIFER, ANDREW GREEN, JAMIE COYLE, NICOLE CASHMAN, ROSE MCMANUS, SYLVIA DEANGELO CASHMAN, JANE RICHARDS, DRILON RADA, MICHELLE CONRON, LIAM LARKIN, BENJAMIN SCHNEIBLE, TIMOTHY EDSON, SPIRO THEOFILATOS, BOHDAN LANCINGER, JOSH WINKELMAN, and DAWN DELGADO, <br><br>   Plaintiffs, <br><br>   v. <br><br> VBIT TECHNOLOGIES CORP., VBIT MINING LLC, VBIT DC CORP., ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, SEAN TU, LILLIAN ZHOU, JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10, <br><br>   Defendants. | Civil Action No. 22-1164-CFC-SRF |

**REPORT AND RECOMMENDATION[1]**

Presently before the court in this civil action for violations of federal securities laws and Delaware law is Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary

---

[1] Pursuant to 28 U.S.C. § 636 and the referral order dated December 13, 2022 (D.I. 27), this decision is issued as a Report and Recommendation. *See Ali v. Howard*, C.A. No. 05-102-SLR-LPS, 2008 WL 4427209, at *1 n.5 (D. Del. Sept. 30, 2008) (explaining that the magistrate judge's authority with respect to a motion for TRO/PI is limited to issuing a Report and Recommendation).

injunction ("PI") without notice as to certain parties. (D.I. 82)[2] For the following reasons, I recommend that the court DENY Plaintiffs' motion for a TRO.

## I.  BACKGROUND

This case was filed on September 2, 2022, and the operative amended complaint was filed on April 17, 2023. (D.I. 1; D.I. 57) The amended complaint alleges that Plaintiffs[3] were defrauded out of millions of dollars in a massive Ponzi scheme after they entered into Bitcoin mining contracts with Defendants.[4] (D.I. 57 at ¶¶ 1-12) Under the contracts, Defendants agreed to host physical Bitcoin mining equipment and allow Plaintiffs to use that equipment to mine Bitcoin in exchange for hardware charges and hosting fees paid by Plaintiffs. (*Id.* at ¶ 4)

The amended complaint alleges that Defendants did not actually offer or maintain individualized, hardware-hosted mining services to Plaintiffs. (*Id.* at ¶ 12) Instead, they pooled together their customers' computing power in a "cloud mining" practice unrelated to the physical products and services they purported to sell. (*Id.* at ¶¶ 12-13) Defendants engaged in aggressive marketing schemes to recruit new customers, using funds from customers' virtual wallets to make high-risk investments. (*Id.* at ¶¶ 5, 11, 14)

When the price of Bitcoin dropped precipitously in late 2021 and early 2022, Defendants were no longer able to fund their customers' Bitcoin withdrawals. (*Id.* at ¶ 8) As a result, Plaintiffs' assets were frozen in their virtual wallets, and they have been unable to make any withdrawals since that time. (*Id.* at ¶¶ 9-10, 129) Plaintiffs have recently uncovered evidence

---

[2] The opening brief associated with the pending motion is found at D.I. 83. Defendant Sean Tu filed an answering brief indicating that he did not oppose the motion. (D.I. 95) No other defendant responded to the motion and no additional briefing was filed.

[3] For the sake of brevity, the term "Plaintiffs" refers collectively to the individuals identified as plaintiffs in the case caption.

[4] The term "Defendants" collectively refers to VBit Technologies Corp., VBit Mining LLC, VBit DC Corp., Advanced Mining Group, Danh Cong Vo a/k/a Don Vo, Sean Tu, Lillian Zhou, John Doe Individuals 1-10, and ABC Companies 1-10.

that Defendants took Plaintiffs' assets and redirected them to other Bitcoin wallets owned by one or more Defendants and/or non-parties. (D.I. 82, Ex. A at Ex. 1) According to Plaintiffs, these other Bitcoin wallets are directly traceable to Plaintiffs' Bitcoin accounts, and they were depleted around the same time Plaintiffs' funds were frozen. (*Id.*)

Plaintiffs filed the pending motion on June 14, 2023, seeking expedited injunctive relief to freeze and preserve all crypto-assets and other currency owned by Defendants. (D.I. 82) The motion was accompanied by the expert report of Kyeson Utley, which describes the transfer of funds between virtual wallets and exchange wallets used as cash-out points that are likely owned by Defendants. (*Id.*, Ex. A at Ex. 1) The expert report discloses that many of the wallets had been fully depleted at least six months prior to the date of the report. (*Id.* at 5-13) The report also details transaction activity and account balances in active wallets believed to be associated with Defendants. (*Id.* at 14-18)

The court scheduled oral argument on the pending motion for July 13, 2023. (D.I. 85) On July 5, 2023, Plaintiffs requested a continuance of the oral argument due to Utley's unavailability to testify live. (D.I. 105) The court rescheduled the oral argument for August 9, 2023. (D.I. 106) On August 3, 2023, Plaintiffs requested leave for Utley to testify remotely during the August 9 hearing. (D.I. 107) The court denied the request, and Plaintiffs opted to present Utley's testimony by written declaration during the August 9 hearing. (D.I. 108; D.I. 109)

At the hearing on August 9, Plaintiffs presented live testimony from lead plaintiff Morgan C. Huntley, as well as a written declaration by Utley dated August 8, 2023. (8/9/2023 Tr.) Utley's written declaration largely tracks his expert report and provides updated account balances for several virtual wallets. (8/9/2023 Tr., Plaintiffs' Ex. 3) These updated account

3

balances indicate that the remaining assets in the active wallets were substantially depleted between the date of the originally-scheduled TRO hearing and the rescheduled hearing: "VBit dissipated over $14.4 million from one of those wallets in the past two-and-a-half weeks alone." (*Id.* at ¶¶ 5, 23-26)

## II.   LEGAL STANDARD

A temporary restraining order is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks and citations omitted). The purpose of a TRO is to temporarily preserve the status quo. *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020). The Third Circuit has defined the status quo as "the last, peaceable, noncontested status of the parties." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (internal quotation marks and citations omitted).

To obtain a TRO, the movant "must establish that he is likely to succeed on the merits" and will "suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Once the movant satisfies its burden on these first two factors, the court considers whether "the balance of equities tips in [the movant's] favor" and whether "an injunction is in the public interest." *Id.* The court must then consider all four factors to determine whether, on balance, they "favor . . . granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose" a motion for a TRO or PI. 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2949 at 237 (3d ed.); *see Bullock v. Carney*, 463 F. Supp. 3d 519, 525 (D. Del. 2020).

A TRO may be issued without notice to the adverse party where it is "clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In contrast, a PI must be issued with notice to the adverse party under Rule 65(a). Fed. R. Civ. P. 65(a)(1); *see Hope*, 956 F.3d at 160. Where the adverse party has notice of the motion for a TRO, the court applies the same standard to a motion for PI and a motion for a TRO. *See Genentech, Inc. v. Immunex Rhode Island Corp.*, 395 F. Supp. 3d 357, 366 (D. Del. 2019).

### III. DISCUSSION

Plaintiffs' motion for a TRO and PI seeks equitable injunctive relief to secure their misappropriated cryptocurrency assets. The Third Circuit has recognized that a prejudgment freeze of assets is an appropriate form of injunctive relief when it is aimed at preventing further misconduct and preserving the availability of equitable relief. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 208 n.4 (3d Cir. 2001). However, Plaintiffs must first establish a likelihood of success on the merits and irreparable harm in the absence of preliminary relief.

#### A. Likelihood of Success on the Merits

Plaintiffs have shown a likelihood of success on the merits of their claims against Defendants for violations of §§ 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77l(c), and 77l(a), which prohibit the unregistered offer and sale of securities; § 15 of the Securities Act for controlling person liability, 15 U.S.C. § 77o; § 10(b) of the Securities Act and Rule 10b-5 for fraud in the purchase or sale of securities, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; common law fraud; negligent misrepresentation; civil conspiracy; breach of contract; unjust enrichment; violations of the Delaware Uniform Deceptive Trade Practices Act ("DDTPA") and Delaware Consumer Fraud Act ("DCFA"); and violations of the Pennsylvania Unfair Trade

5

Practices and Consumer Protection Law ("UTPCPL"). (D.I. 57 at ¶¶ 138-204) Evidence in the record supports Plaintiffs' assertion that they believed they would receive individualized Bitcoin mining hardware and services under their contracts with Defendants but, in reality, the Bitcoin assets in their virtual wallets were frozen and moved to other accounts for Defendants' own purposes.

Plaintiffs have used a blockchain forensics expert to locate specific, identifiable property, tracing the path of approximately $12 million in cryptocurrency assets. The results of the investigation support Plaintiffs' position that Defendants misappropriated those assets by transferring them to other cryptocurrency accounts under the control of Defendants or nonparties:

| Exchange | Wallet No. | Balance |
|---|---|---|
| Crypto.com | 19B6FCUrXJwoM1xexV19EMcF9MihTnLMcf | $0.00 |
| Crypto.com | 1NAVvzAo9GyfRLofHizWHhyGXd2XNmyXZu | $0.00 |
| Crypto.com | bc1qj5yt6h5ve4xcwf9m5efhr477jgk00veam7v062 | $0.00 |
| Crypto.com | 18JuDGsqmw23DeGqac6TBhcta9ALCfsKwE | $0.00 |
| Crypto.com | 14Yvv9aVnTXPPh616FT9M9uNiXSju1sZTd | $0.00 |
| Bit.com | 1vhk5DCCuhmivHMuHmZLPP6bwkSf2TTzY | $0.00 |
| Coinbase | 3Dcw5c8J2YEwRfWXzvfjWSzGWc69ndZqck | $0.00 |
| Kraken | 3EeHsUEnyYQkjdV7zT2v4KHid6B16RjkHn | $1,146,697 |
| Binance | 14crSfu8Je3RojopHvutMfhusuP6XArAHU | $1,787,066.77 |
| HKex | 1LuE3aWsBKTwUw2ApoVHn1TFMbmy19Lgvh | $0.29 |
| OceanEx / Coinbene | bc1q0qfzuge7vr5s2xkczrjkccmxemlyyn8mhx298v | $5,384,950 |
| OceanEx / Coinbene | 38XnPvu9PmonFU9WouPXUjYbW91wa5MerL | $4,591,656 |

(D.I. 83 at 2; D.I. 82, Ex. A at Ex. 1) Other districts have found similar blockchain analytics evidence to be sufficient to establish a strong likelihood of success on the merits in support of prejudgment injunctive relief. *See, e.g., Astrove v. Doe*, 2022 WL 2805345, at *3-4 (S.D. Fla. June 17, 2022).

6

Defendants have not substantively challenged Plaintiffs' factual assertions or evidence, nor have they demonstrated any justification for retaining control over Plaintiffs' assets. *See id.* at *4. Defendant Sean Tu confirmed he does not oppose the pending motion for TRO and PI. (D.I. 95) On July 5, 2023, a default in appearance was entered against Advanced Mining Group, VBit DC Corp., VBit Mining LLC, VBit Technologies Corp., and Lillian Zhou. (D.I. 104) On August 9, 2023, a default in appearance was entered against defendant Danh Cong Vo. (D.I. 111) Plaintiffs' evidence showing Defendants' transfer of their cryptocurrency assets and Defendants' failure to offer any substantive response or defense to Plaintiffs' allegations are sufficient to establish Plaintiffs' likelihood of success on the merits.

**B. Irreparable Harm**

Plaintiffs have not made a compelling showing that they will suffer immediate and irreparable harm in the absence of prejudgment injunctive relief. *See Winter*, 555 U.S. at 22 (explaining that the moving party must make a "clear showing" of the risk of irreparable harm to obtain injunctive relief). Citing the heightened risks of dissipation for assets held in crypto-exchanges, Plaintiffs contend their ability to recover their assets may be lost if Defendants continue to transfer assets and deplete the funds in Plaintiffs' virtual wallets. (D.I. 83 at 13-15) In support of this argument, Plaintiffs refer to the June 12, 2023 expert report of Kyeson Utley, which sets forth the history of transactions in the relevant virtual accounts. D.I. 82, Ex. A at Ex. 1)

The urgency of the relief sought is undercut by the timing of Plaintiffs' motion and Plaintiffs' request to continue the hearing after seeking expedited relief. (D.I. 105); *see Chestnut Hill Sound Inc. v. Apple Inc.*, C.A. No. 15-261-RGA, 2015 WL 6870037, at *4 (D. Del. Nov. 6, 2015) (stating that the movants' delay "is a factor that weighs against the issuance of a

7

preliminary injunction, by demonstrating that there is no apparent urgency to the request for injunctive relief."). Plaintiffs filed the pending motion one year after discovering they could no longer make Bitcoin withdrawals from their accounts, more than nine months after filing this lawsuit, and about eight months after losing all contact with Defendants. (D.I. 1 at ¶ 7; D.I. 82; 8/9/2023 Tr.) These facts distinguish the instant case from the authority Plaintiffs identified as the most comparable to the circumstances at hand. In *Jacobo v. Doe*, the plaintiff filed a motion for a temporary restraining order seeking to freeze the defendant's cryptocurrency assets at specified wallet addresses contemporaneously with the filing of her complaint. 2022 WL 2052637, at *1 (E.D. Cal. June 7, 2022). Here, in contrast, Plaintiffs sought a TRO nine months after the complaint was filed, and about a year after losing access to their virtual wallets.

At oral argument, Plaintiffs indicated that the urgency of the requested relief resulted from Utley's inability to trace the wallets until May of 2023. (8/9/2023 Tr.) But there is no evidence on the present record confirming when Plaintiffs identified the cryptocurrency accounts described in their briefing or when they retained Utley to draft an expert report. Instead, Plaintiffs generally represent that they "[r]ecently" discovered various Bitcoin wallets owned by Defendants or nonparties that can be traced to Plaintiffs' own assets. (D.I. 83 at 7) But the Reddit thread marked as Huntley Exhibit 8 during the August 9 oral argument indicates that these Bitcoin wallet numbers were disclosed on the thread a year ago, prior to the filing of the complaint. (8/9/2023 Tr., Huntley Ex. 8)

Plaintiffs' unusual request to continue the hearing on the pending motion for a TRO further discredits Plaintiffs' allegations of urgency. *See Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90-91 (D.D.C. 2014) (finding plaintiffs' request to continue preliminary injunction hearing was "difficult to reconcile with the pending request for injunctive

8

relief, since plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." (internal quotations and citations omitted)). The June 2023 Utley report indicates that Defendants already dissipated the assets in some accounts, and Plaintiffs represent that "[e]very day that the Defendants are permitted to control the funds in the crypto wallets and to possess, use, and conceal those accounts, Plaintiffs stand to suffer severe, immediate, and irreparable harm, including, but not limited to, the loss of all assets invested with the Defendants." (D.I. 83 at 14) Nonetheless, Plaintiffs requested a continuance of the July 13 hearing on the TRO motion so that Utley could present live testimony during the hearing. (D.I. 105) The requested extension ultimately served no purpose because Utley did not testify live at the rescheduled hearing on August 9, 2023. (D.I. 109) "Such dilatory action . . . stands in stark contrast to the high bar the plaintiffs must clear to show irreparable harm." *Open Top*, 48 F. Supp. 3d at 90.

Utley's August 8 declaration represents that assets in the active virtual wallets were substantially depleted during the weeks between the originally scheduled TRO hearing on July 13 and the rescheduled hearing on August 9. (8/9/2023 Tr., Plaintiffs' Ex. 3) Specifically, the declaration states that a secondary exchange wallet believed to be owned by Defendants held more than $16 million as of July 21, 2023, but this balance was reduced to $2.2 million by August 8, 2023. (*Id.* at ¶¶ 23-26) Thus, the remaining identifiable assets in the exchange wallet were reduced by approximately 86% during the delay caused by Plaintiffs' own request for a continuance. Plaintiffs' delay in moving for injunctive relief, combined with their request to delay the hearing on that motion "demonstrate[ ] that any alleged harm lacks the urgency and immediacy required to grant the extraordinary relief" requested. *Open Top*, 48 F. Supp. 3d at 91.

Moreover, Plaintiffs' evidence does not support a conclusion that the asset transfers are entirely attributable to Defendants' transfer of Plaintiffs' assets, let alone differentiate among Defendants in the alleged transfer of assets. Instead, Utley's declaration confirms that the few remaining active wallets "by their nature hold assets owned by numerous people or entities, not just VBit." (8/9/2023 Tr., Plaintiffs' Ex. 3 at ¶ 18) Utley states that he is "unable to determine how much of the assets held by these wallets are owned and/or controlled by VBit." (*Id.* at ¶ 19) And evidence showing that more than $16 million was funneled into a virtual wallet as of July 21 also lacks specificity, as Plaintiffs' complaint alleges that Plaintiffs' "aggregate principal investments" with Defendants amounted to approximately $3.5 million. (D.I. 57 at ¶¶ 7, 167, 184, 190; 8/9/2023 Tr., Plaintiffs' Ex. 3 at ¶ 23) The evidence does not trace the wallet balances to Plaintiffs' own losses.

This evidence shows that any freeze on these assets is likely to impact nonparties to the litigation. The court is mindful that cryptocurrency assets pose a heightened risk of dissipation. *See Jacobo*, 2022 WL 2052637, at *3. But Plaintiffs are not excused from offering sufficient evidence to show that the extraordinary remedy of freezing the assets is necessary to prevent irreparable harm. *See Luan v. G4Free Sports*, C.A. No. 23-60848-AMC, D.I. 14 at 9 (S.D. Fla. Jul. 21, 2023) ("As in any civil case, there is always the risk that a prevailing party may be unable to monetarily recover on a judgment, but ordinarily, courts do not freeze defendants' assets whenever they are sued in order to make it easier for plaintiffs to collect on future judgments." (internal quotations and citations omitted)).

In sum, Plaintiffs ask the court to grant the extraordinary remedy of imposing a prejudgment freeze on assets, which may not be entirely owned or controlled by Defendants, after a delay that allegedly enabled Defendants to dissipate over $10 billion in Bitcoin.

(8/9/2023 Tr., Plaintiffs' Ex. 3 at ¶ 5) Plaintiffs were unable to access their assets for about a year before seeking the requested relief, and Utley's expert report confirms that at least six of these wallets have been entirely depleted since June of 2022. (D.I. 82, Ex. A at Ex. 1) Plaintiffs' request for expedited relief was followed by a request for a continuance, during which Defendants allegedly dissipated an additional $14 million in assets. (8/9/2023 Tr., Plaintiffs' Ex. 3 at ¶¶ 5, 23-26) Plaintiffs' course of conduct "demonstrate[s] that any alleged harm lacks the urgency and immediacy required to grant the extraordinary relief" requested. *Open Top*, 48 F. Supp. 3d at 91. Under these circumstances, granting the "extraordinary and drastic remedy" of a temporary restraining order or preliminary injunction is not warranted. *Mazurek*, 520 U.S. at 972.

### C. Remaining Considerations

Because Plaintiffs have failed to establish that they would suffer irreparable harm without preliminary injunctive relief, the court need not reach the remaining factors pertaining to the balance of equities and public interest. *See Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008). "The absence of irreparable harm is alone a sufficient basis to deny [Plaintiffs'] request for a temporary restraining order and preliminary injunction." *Doe v. Del. State Univ. Bd. of Trustees*, C.A. No. 20-1559-MN, 2021 WL 2036670, at *4 (D. Del. May 21, 2021).

### IV. CONCLUSION

For the foregoing reasons, I recommend that the court DENY Plaintiffs' motion for a TRO and PI. (D.I. 82)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In

11

the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **August 17, 2023**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)).  If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 10, 2023

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE